WESTERN MARYLAND RAIL ROAD COMPANY, and others, *vs.* HENRY H. OWINGS, and others.— WESTERN MARYLAND RAIL ROAD COMPANY *vs.* EPHRAIM BERRYMAN.

A court of equity has jurisdiction to prevent, *by injunction*, a railroad company from making its railroad over the land of a private citizen where the company has not paid or tendered compensation for the use of the land, as provided in Art. 3, sec. 46, of the Constitution of the State.

In such case, the allegation in the bill that the company is proceeding without any legal authority and license, and has not paid or tendered compensation for the use of the land, is sufficient to authorize the granting of an injunction, without reference to the question whether the damage complained of is irreparable or not.

APPEALS from the Equity side of the Circuit Court for Baltimore county.

These appeals are taken from orders of the court below, (PRICE, J.,) granting injunctions upon bills filed, the one on the 16th of February 1858, and the other on the 24th of May 1859, by the appellees against the appellants.    The allegations of the bills and the purport of the injunctions are sufficiently stated in the opinion of this court.    From the orders granting the injunctions the defendants, having first filed their answers, appealed.

The causes were argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Coleman Yellott*, for the appellants, after arguing that the allegations of the bills, in other respects, were not sufficient to warrant the granting of the injunctions, further insisted:

That the fact, that the alleged trespass was committed by a *corporation*, does not give the complainants any superior equity.    Their right to the remedy of an injunction depends *upon the character of the damage* about to be sustained, and not whether it was to be inflicted by a *corporation* or an *indi-*

*vidual.* A careful examination of the cases cited by the appellees will show that they do not sustain the position taken by their counsel. Full effect can be given to the constitutional provision (Art. 3, sec. 46) that "the Legislature shall enact no law authorizing private property to be taken for public use without just compensation," without adopting the construction contended for by the appellees' counsel. If any chartered company enter upon the lands, without having paid or tendered "just compensation, as agreed upon between the parties or awarded by a jury," the company would be trespassers, but whether such trespass would be restrained by injunction would depend upon its nature, just as if it was about to be committed by an individual. This view seems to have been adopted by the court in 7 *Md. Rep.*, 516, *Steuart vs. The Mayor & City Council of Baltimore*, where it is said: "The persons so entering would be responsible, in damages, to the owner of the property."

Of the cases referred to by the appellees, it will be found that in 1 *Eng. Railway Cases*, 158, the injunction was refused; that in 4 *Johns. Ch. Rep.*, 53, 54, the corporation were about to destroy the *stable, greenhouse, fence,* and *landmarks,* of the complainants; that in 31 *Eng. Law & Eq. Rep.*, 249, 258, the decision turned upon the construction of a certain Act of Parliament, and the injunction was refused; and that the case in 2 *Dow.*, 521, was one from Scotland, and turned upon the construction of certain Acts of Parliament, and was an action for damages.

The bills in the present cases merely aver that no compensation has been paid or tendered by the defendant, the Western Maryland Railroad company. They do not aver that a jury had, or had not, been summoned to assess the damages. It may have been that a jury had met according to law, and had decided that the complainants were entitled to no damages. Such a supposition is neither an improbable one, nor at all inconsistent with the averments made in the bills. It frequently happens that the owner of land is entitled to no compensation, for the reason, that his property is benefitted and increased in value by the laying of a railroad track through it.

Western Md. Rail Road Co., *et al.*, *vs.* Owings, *et al.*

It is also to be observed, that, after the filing of the bill in *Berryman's case*, but *before* the filing of that in *Owing's case*, the Act of 1858, ch. 420, was passed, and by the 4th section of that Act, the Western Maryland Railroad company were authorized to enter upon and use the lands necessary for their purposes, even before paying or tendering payment of damages, provided they gave bond of indemnity to meet such damages as might be afterwards recovered. Such was the existing law at the time the bill in *Owing's case* was filed. According to this law, every averment of the bill, in that case, may be assumed to be true (in regard to non-payment, or tender of consideration) and yet the company may not have been trespassers; the bill not averring that no bond of indemnity had been given. It may be said, in reply, that this Act is void, because in violation of the provisions of our Constitution. My answer is, that the court below could not decide upon the constitutionality of an Act of Assembly, upon an *ex-parte* decision upon an application for an order for an injunction. In deciding upon such application, the court must assume that the Act is constitutional, and the same rule will govern the appellate court, in deciding the appeal from such an order. 1 *Am. Railway cases*, 156, 162, *Dessing vs. York & Cumberland Railway company*.

*R. J. Gittings*, and *A. W. Machen*, for the appellees:

That a railroad company, in violation of the Constitution and of its charter, is taking actual possession of the land of a private person, and constructing their road upon it, without his consent, or the payment, or tender, of compensation, legally ascertained, constitutes a proper case for the interference of equity by injunction. 1 *Md. Ch. Dec.*, 248, *Harness vs. Ches. & Ohio Canal Co.* 7 *Md. Rep.*, 500, *Stewart vs. Mayor & C. C. of Balto.* 1 *Bald.*, 231, *Bonaparte vs. Camden & Amboy R. R. Co.* 7 *Smedes & Marshall*, 568, *Stewart vs. Raymond R. R. Co.* 2 *Dow, P. C.*, 521, *Shand vs. Henderson.* 4 *Johns. Ch. Rep.*, 53, *Varick vs. Corporation of New York.* 2 *Story's Eq.*, sec 927. 1 *Eng. Railway Cases*, 154, *Dunn Nav. Co. vs.*

*North Midland Railway Co.* 31 *Eng. Law & Eq. Rep.*, 252, *Pinchin vs. London & Blackwall Railway Co.*

The whole argument on behalf of the appellants depends upon the proposition, that in cases, such as are set out in these bills, as in an ordinary case of trespass, some special and irreparable mischief must be shown to justify the interference of equity. But this is supported by no authority, whilst, on the other hand, there is abundant authority to support the position of the appellees. Chancellor Kent, after asserting the constitutional right of the owner to receive compensation before his land is taken, says: "The government is bound, in such cases, to provide some tribunal for the assessment of the compensation or indemnity before which each party may meet and discuss their claims on equal terms; and if the government proceed, without taking these steps, their officers and agents *may and ought to be restrained by injunction.*" 2 *Kent*, 339, *note*, and *Henderson vs. Mayor, &c., of New Orleans,* 5 *Louisiana Rep.*, 416, cited by him, is directly in point here. He also rests his own decision in 2 *Johns. Ch. Rep.*, 162, *Gardner vs. Village of Newburgh,* on this general principle. And see also the opinion of *Sharkey, C. J.,* in *Thompson vs. Grand Gulf R. R. Co.*, 3 *How., (Miss.,)* 249. We confidently rely, also, upon the authorities above cited to this point. Indeed, the point seems too clear for argument. As was said by the court of Errors and Appeals of Mississippi in *Stewart vs. Raymond R. R. Co.*, 7 *Smedes & Marshall*, 575, "If the company has no right to the easement before the payment of the damages, the proposition that Stewart has a right to restrain the passage of the cars until such compensation, would seem to follow as an inevitable consequence." In that case two bills were filed, one by the company, the other for an injunction by Stewart, the land owner; the latter was sustained. *Mohawk & Hudson R. R. Co. vs. Artcher,* 6 *Paige,* 83, 88, and *Bird vs. Wilmington & Manchester R. R. Co.*, 4 *Amer. Law Register,* 222, in the Court of Appeals of South Carolina, are additional and strong authorities for the complainants.

There is nothing, it is submitted, in the criticism, that there

is no direct allegation in these bills, that no inquisitions had been taken. If inquisitions had been had, it was for the railroad company to set them up. It is a *concessum* that no inquisitions exist. But the fact of inquisitions would be no defence; there must be compliance with their terms. The bills set out the entire grievances forbidden, as well by the Constitution as the act of incorporation; they allege that the complainants' private property is being taken for public use and the purposes of the company, without just compensation having been first paid or tendered. They further allege that these acts are *wrongful* and without the complainants' *consent, or any lawful authority whatsoever*. This necessarily negatives every thing which could justify the company under the Constitution and their charter, in any conceivable circumstances. The considerations last advanced are an answer to the point made by the appellants in *Owing's case*, upon the Act of 1858, ch. 420. It is distinctly alleged and shown that the company are proceeding in contravention of their *charter*, as well as of the Constitution, so that there is no room for the application of the case in Maine, reported in 1 *Amer. Railway Cases*, 152. But it is clear that that case is not law. The authority of Chancellor Kent is directly against it. 2 *Kent*, 339, 340, and *notes*. And in Maryland the doctrine has been constantly conceded and acted upon, that a corporation proceeding to take property, under an unconstitutional law, may be enjoined. See *Steuart vs. Mayor & C. C. of Balto.*, 7 *Md. Rep.*, 500, 511. *Alexander vs. Mayor & C. C. of Balto.*, 5 *Gill*, 383. *Harness vs. Ches. & Ohio Canal Co.*, 1 *Md. Ch. Dec.*, 248.

Tuck, J., delivered the opinion of this court:

An injunction was granted by the Circuit court of Baltimore county, sitting in equity, restraining the appellants from making a railroad over the lands of the appellees.

The bill states certain acts done and threatened, which, it is charged, will cause irreparable damage; that the defendants were proceeding without any legal authority or license; and that the company had not paid or tendered compensation for the use of the land.

294 MARYLAND REPORTS.

Western Md. Rail Road Co., et al., vs. Owings, et al.

We do not perceive how the court could have refused the injunction in the face of this latter averment in the bill. The clause of the Constitution applicable to the point (Art. 3, sec. 46) is too plain to admit of any doubt. The nature of the damage complained of, whether irreparable or not, has nothing to do with the question, when thus presented. If the acts are productive of such effects as would otherwise entitle a party to relief, he cannot prevent them, if the company is authorized by the charter to condemn the property, and, for the same reason, the license of the owner is not necessary. Supposing that the Act of incorporation does give this power—but, as the charter is not before us, we cannot speak judicially—the company had no right to proceed without complying with the requirement of the Constitution, unless there was something to relieve it from the obligation thereby imposed. It is claimed in argument that the Act of 1858, ch. 420, had such effect, which is denied by the appellees, but it is not before us, and we decline pronouncing upon its validity as a constitutional exercise of legislative power. *Scaggs vs. Balto. & Wash. R. R. Co.*, 10 *Md. Rep.*, 280.

We have no doubt of the jurisdiction of a court of equity in such cases as this. It has been frequently exercised, as shown by the authorities cited in argument, and there are many others to the effect, that corporations may be restrained from an abuse of their powers. The principle on which the court acts was stated by Lord Chancellor Cranworth, in *Pinchin vs. London & Blackwall Railway Co.*, 31 *Eng. Law & Eq. Rep.*, 252, to be: "That it will not suffer powerful corporate bodies, with whom it is very difficult to deal, to take, under their Acts of Parliament, proceedings which are of an illegal character, or which are of doubtful legality, if, by so doing, they place those against whom they are proceeding, in a condition of peril, from which it might be difficult for them to extricate themselves;" which course, he says, had been repeatedly adopted by Lord Cottenham and other judges. *Adams Eq.*, 486, 2 *Story's Eq.*, sec. 927, *Bonaparte vs. Camden & Amboy R. R. Co.*, 1 *Bald.*, 231, are also authorities in point.

*Order affirmed, with costs.*

(Decided March 13th, 1860.)

In the case of *The Western Maryland Railroad Company vs. Berryman*, the facts are substantially the same as those stated in *Owings' case*, and, for the same reasons, the order must be affirmed, with costs.

*Order affirmed, with costs.*

(Decided March 13th, 1860.