[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 144 
The petitioner seeks to condemn land for the purposes of its railway, and its right to do so is here in controversy. It was organized under the act passed May 6, 1884, entitled "An act to provide for the construction, maintenance and operation of street surface railroads and branches thereof in cities, towns and villages," and became a corporation by force of that act. The corporators assumed the name of the South Beach Railway Company, and certified the objects of the corporation to be to construct and operate a street surface railway from the Arrochar station of the Staten Island Rapid Transit Railroad Company on Richmond avenue in the village of Edgewater, along Richmond avenue to Sea avenue, along Sea avenue to the Boulevard parallel with the south beach, and thence along that Boulevard "to a point at or near Bergman's hotel," the whole distance being about one mile. It does not now propose to build that line, or indeed to build a street railroad at all. It has filed a map of its intended route which cresses Richmond avenue, but does not run through or along it, which does not touch Sea avenue at any point, which is located upon private property and out of the streets for the *Page 145 
whole distance from its starting point until it reaches the Boulevard, along which it goes for a short distance to the hotel at which it ends. This new line is located almost wholly upon the land of Mrs. Byrnes, which it is now sought to condemn, and the proceeding is defended upon the ground that the act of 1884 authorizes a construction not only upon and along streets and avenues, but also "through, along and upon any private property which said company may acquire for the purpose;" and also upon the ground that the act confers upon the corporations formed thereunder all the powers and privileges granted by the General Railroad Act of 1850, and so the right to change the selected route from streets and avenues to private property, and condemn the land along the new line is given.
We need not stop to discuss the constitutional question raised by the reference to the act of 1850, or deny for present purposes the right of a street railway to condemn in some cases and for some uses the land of a private owner since admitting all that, without so deciding, we are yet of opinion that this proceeding cannot be maintained.
Section 13 of the act of 1850, allows any corporation organized thereunder to obtain by condemnation such land as is "required for the purposes of its incorporation." The power is not general or unlimited. The company cannot condemn what it pleases, but only such and so much land as the proper execution of its corporate purposes shall require and render necessary. What then were the purposes of the incorporation of the South Beach Railroad Company? Obviously, they are those and those only which the law of its organization describes and defines, and which are certified in its articles of association, operating, when filed, as its charter and the measure of its authority. Referring to those we see that the corporate purposes were not to build a railroad between specified termini by the most feasible route, which is the characteristic of an ordinary railroad, but to build and operate a street railroad, such as the act of 1884 contemplates and regulates; and not only that, but one running along three specified avenues in *Page 146 
the town of Edgewater and not at all through or along private property. Such are the prescribed and declared purposes of the incorporation, and the company, it may be conceded, might have the right to acquire by condemnation such and so much of private property as should be reasonably necessary to accomplish those purposes. Now the chief element of a street railway, as authorized by the act of 1884, is that it is built upon and passes along streets and avenues for the convenience of those living or moving thereon. Its fundamental purpose is to accommodate the street travel, and its motive power is dictated and regulated to that end; and while, consistently with its general object, it may need for switches or storage, or stables or stations the land of private owners, yet that necessity is only incidental to the main purpose of a line along the streets accommodating the street travel. Here the land of Mrs. Byrnes is needed to build the main and principal part of the line, only that it may avoid the streets altogether. The act of 1884 stamps an indelible mark upon the corporations which it organizes. The consent of the local authorities is to be obtained, and that of a certain portion of the abutting owners, or in default of the last the certificate of chosen commissioners. Every step of the way, through all the conditions of the act, it plainly contemplates a railway along the streets and avenues of a village or city. The petitioner chose to organize under that act, to build and operate the kind and character of railway which it contemplated, to declare in precise terms that the objects of its incorporation were exactly those of a street railway along named avenues of the village of Edgewater. It is very plain, therefore, that none of the land of Mrs. Byrnes is required for the purposes of its incorporation by the South Beach Railway Company, but that the property is wanted to enable the company to disown and abandon those purposes and cease to be a street railway at all. If we upheld this contention, it might be possible to build a street railway for a city along a hundred feet of a street and then condemn the land in the center of the blocks all the way to its terminus. A change of route is possible under the act of 1850, where, as is usually *Page 147 
the case, freedom to change exists under the charter, but where a change of a route involves not only a contradiction and violation of the articles of association, but also of the character and quality of the corporation, it becomes more than a mere change. It follows that since the land sought to be condemned is not required for the purposes of the incorporation, but to enable those purposes to be substantially abandoned, the proceedings cannot be upheld.
The order of the General Term should be affirmed with costs.
All concur.
Judgment affirmed.