### SCHENECTADY RY. CO. v. PECK et al.

(Supreme Court, Appellate Division, Third Department. November 11, 1903.)

1. STREET RAILWAYS—FEE IN STREET—CONDEMNATION.

Laws 1895, p. 791, c. 933, amending section 90 of the railroad law (Laws 1890, p. 1108, c. 565), assumes that a street surface railroad corporation can state in its certificate of incorporation the streets in which its road is to be constructed, and the private property over which it is proposed to construct and operate it; provides for filing a map of the proposed route, and that all provisions of section 6 (page 1084) of the railroad law shall apply to the route so located; and then states, "Nothing in this section shall be deemed to authorize a street railroad corporation to acquire real property within a city by condemnation." *Held*, that such prohibition was intended to relate only to private property, and not to an abutting owner's property rights in the bed of a street.

Appeal from Special Term, Schenectady County.

Condemnation proceedings by the Schenectady Railway Company against Katharine K. Peck and others. From a judgment for petitioner, defendants appeal. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Edward Winslow Paige, for appellants.

Hun & Parker (Marcus T. Hun and James A. Van Voast, of counsel), for respondent.

CHASE, J.   In an action between the parties to this proceeding the appellants were adjudged the owners of the fee of that portion of Washington avenue, in the city of Schenectady, described in the petition herein, and the petitioner was enjoined from constructing a street railroad thereon.   Peck v. Schenectady Ry. Co., 67 App. Div. 359, 73 N. Y. Supp. 794; Id., 170 N. Y. 298, 63 N. E. 357.   In the Court of Appeals the judgment of the Special Term was modified by adding thereto "a provision that, if the defendant shall acquire a right to the use of the land in question for street railway purposes, the judgment shall not be regarded as effective to restrain it from entering upon such premises for the purpose of building, maintaining, and operating its railroad thereon."   In that case it is held that the use of a city street for the purposes of a street surface railroad operated by electric power imposes an added burden upon the property rights of the owners of the fee, subject to the public easement for street purposes, and an entry upon such street for the purposes of constructing and operating an electric street railroad thereon constitutes a trespass upon the property rights of such owner of the fee of the street.   Following said decision in the Court of Appeals, the petitioner commenced a proceeding to condemn the property rights of the appellants in said lands.   It is from a judgment in favor of the petitioner in such proceeding that this appeal is taken.   It is conceded that the only question at issue is the question as to the power of the court to adjudge that condemnation be made of the premises described in the petition.

If it be true, as contended by the appellants, that street railroad corporations are prohibited from acquiring by condemnation the property rights of persons owning the fee of streets in cities, it necessarily follows that any one or more persons, owning the fee of any street in a city through the width thereof, even at a single point, may prevent the building of a street railroad upon such street, so long as the law remains unchanged.   It is a well-known fact that the property rights of owners of the fee in streets in cities where railroads have been constructed and are being operated have not generally been condemned or purchased.   If the appellants' contention is correct, nonassenting property owners could enjoin the operation of railroads over a street, the fee of any portion of which is owned by them; and, if such injunctions were generally insisted upon, it would result in effectually discontinuing the operation of very many existing roads.   No reason for withholding from the court a power so important and essential to contemplated and existing street railroads is apparent.   The construction contended for by the appellants would ascribe to the Legislature an intention antagonistic to all legislation on the subject of public rights of way, and be so opposed to the policy and interest of the state that it should not be upheld unless the intention of the Legislature is so plain that no other construction can be given to its language.

The Legislature has authorized the building of street railroads upon streets in cities upon obtaining the consent, as in the statute prescribed, of a part of the abutting owners, and the further consent of the local authorities.   The Legislature, also, in recognition of

the benefit to be derived by the public from the erection and operation of street railroads, has further provided that, if the consent of property owners as required by the statute cannot be obtained, the court may appoint commissioners to determine whether such railroad ought to be constructed and operated, and the determination of said commissioners that such road ought to be constructed and operated, when confirmed by the court, shall be taken in lieu of the consent of the property owners as provided by the statute. In view of these statutory provisions, it is inconceivable that it should at the same time withhold the power to condemn the property rights of persons owning the naked fee of the streets, when such power is necessary to make effectual its determination in regard to the necessity of such railroad. The absurdity of ascribing to the Legislature an intention to take away the power of the court to condemn property rights in streets is further apparent when we consider that such property rights cannot be taken without a determination by the court that it is necessary for public use, and also in view of the fact that property rights in the naked fee of a street are in most instances nominal only. In this case it is stipulated that the damage to the appellants by taking such property rights is six cents, and by consent the decree herein fixes the appellant's damage at that amount, and directs that the same be paid to the appellants. Serious consequences to public and private interests, and the antagonism of the claimed construction of the statute to all other legislation on the subject, are legitimate considerations in determining the intention of the Legislature. In Adee v. Nassau Electric R. Co., 72 App. Div. 404, 76 N. Y. Supp. 589, it was necessary for the court to determine the question here involved, and we agree with the conclusion reached in that case. We think that a further reference to the statutes will show that at no time prior to the enactment of chapter 995 of the Laws of 1895 could a street railroad corporation take private property by condemnation, except such as was incidental to the erection, maintenance, and operation of its railroad on streets, avenues, roads, and highways.

Prior to 1884, street railroad corporations were formed pursuant to the provisions of chapter 140, p. 211, of the Laws of 1850, and the amendments thereto. Matter of W. S. A. & P. R. Co., 115 N. Y. 442, 22 N. E. 356. And proceedings for the condemnation "of any real estate required for the purposes of its incorporation" were by that act expressly authorized. Section 13. The original street surface railroad act (chapter 252, p. 310, Laws 1884) provided:

"Any company organized as aforesaid * * * may construct, maintain, operate, use and extend a railroad * * * on the surface of the soil through, upon, and along any of the streets, avenues, roads or highways of such cities, towns and villages and also through, along and upon any private property which said company may acquire for the purpose. * * *" Section 3.

It also provided:

"Such corporation shall also have all the powers and privileges granted and be subject to all the liabilities imposed by this act, or by the act entitled 'An act to authorize the formation of railroad corporations and to regu-

late the same,' passed April 2nd, eighteen hundred and fifty, and the several acts amendatory thereof except as the said acts are herein modified." Section 1.

In the matter of S. B. R. Co., 119 N. Y. 141, 23 N. E. 486, the court held that the power to condemn land under the act of 1850 was not general or unlimited, and that under it a company could condemn only such and so much land as the proper execution of its corporate purposes shall require and render necessary; and it was there held that the chief element of a street railway, as authorized by said act of 1884, is that it is built upon and passes along streets and avenues for the convenience of those living and moving thereon, and that such street railroad could condemn only such private property as was incidental to the general purposes of a railroad to be erected, maintained, and operated on streets; and in the discussion of this question the court say:

"If we upheld this contention [that any private property can be condemned], it might be possible to build a street railway for a city along a hundred feet of a street, and then condemn the land in the center of the blocks all the way to its terminus."

Chapter 565, p. 1082, of the Laws of 1890, known as "the Railroad Law," was intended as a consolidation and revision of the existing laws upon the subject of railroads; and it expressly repeals the remaining provisions of the general railroad law of 1850 and the amendments thereto, and the street surface railroad act of 1884 and the amendments thereto. The general provisions in chapter 565, p. 1082, of the Laws of 1890, are applicable to street surface railroads. Matter of Stillwater & M. S. Ry. Co., 171 N. Y. 589, 64 N. E. 511, 59 L. R. A. 489; Buffalo R. Co. v. N. Y., L. E. & W. R. Co., 72 Hun, 583, 25 N. Y. Supp. 265. Section 4, subd. 2, of said act (chapter 565, p. 1083, Laws 1890), gave every railroad corporation power "to acquire by condemnation such real estate and property as may be necessary for such construction and maintenance." By section 2 of said act (chapter 565, p. 1082, Laws 1890), it required that the certificate of incorporation should state the kind of road to be built or operated. Sections 6, 7, pp. 1084, 1086, of said act, relating to the location of the route and the acquisition of title to real property, do not except street surface railroads, but expressly include therein any railroad corporation. Article 4 of said act (chapter 565, p. 1108, Laws 1890), relating to street surface railroads, does not, in terms, authorize the building of such street surface railroad upon private property. Section 90, p. 1108. Notwithstanding the failure of said act to expressly authorize the building of street surface railroads upon private property, we assume that the location of a street surface railroad would not be confined strictly to streets and highways, but that private property could be taken, where it was incidental to the general purposes of the corporation. Nellis on Street Surface Railroads, p. 11.

The railroad law was generally amended by chapter 676, p. 1382, of the Laws of 1892, and, as so amended, it was expressly provided that there should be stated in the articles of incorporation of a street surface railroad corporation the names and description of the streets, avenues, and highways in which the road is to be constructed. Sec-

tion 2, subd. 11, p. 1383. By said act (chapter 676, p. 1384, Laws 1892), section 6, relating to the location of the route, expressly excepts from its provisions street surface railroad corporations. This exception was made for the obvious reason that the act did not contemplate that a street surface railroad corporation would erect, maintain, and operate its road upon private property. By chapter 434, p. 908, of the Laws of 1893, section 90 of the railroad law was amended so as to read as follows:

"The provisions of this article shall apply to every corporation which under the provisions thereof, or of any other law, has constructed or shall construct or operate, or has been or shall be organized to construct or operate, a street surface railroad, or any extension or extensions, branch or branches thereof, for public use in the conveyance of persons and property for compensation, upon and along any street, avenue, road or highway, in any city, town or village, or in any two or more civil divisions of the state, must comply with the provisions of this article. Any street surface railroad corporation, at any time proposing to extend its road or to construct branches thereof, may from time to time make and file in each of the offices in which its certificates of incorporation are filed, a statement of the names and description of the streets, roads, highways and private property, in or upon which it is proposed to construct, maintain or operate such extensions or branches. Upon filing any such statement and upon complying with the conditions set forth in section ninety-one of the railroad law every such corporation shall have the power and privilege to extend, construct, operate and maintain such road extensions or branches on the streets, roads, and highways named in such statement, and also upon any private property which it may acquire for such purpose."

In this act (chapter 434, p. 908, Laws 1893), for the first time since the general consolidation and revision of the railroad law, the words "private property" are used in connection with street surface railroad corporations, and as so used they relate to extensions only. No reference is made in this act to the original certificate of incorporation of street surface railroad corporations, and under the decision in Matter of S. B. R. Co., supra, the words "private property" therein must refer to such private property as is incidental to the general purposes of the corporation.

By chapter 933, p. 791, of the Laws of 1895, section 90 of the railroad law was again amended. By this amendment it is assumed that a street surface railroad corporation can set forth in its certificate of incorporation not only the names and description of the streets, avenues, and highways in which the railroad is to be constructed, but also a description of private property over which it is proposed to construct and operate such railroad. Provision is also made by this amendment for filing in the office of the clerk of the county in which the road is to be constructed a map as provided in section 6 of the railroad law, and it is also therein provided, "And all provisions of section 6 of the act hereby amended so far as applicable shall apply to the route so located." Express authority is given by this amendment to acquire title to any real property, or any right or easement therein, required for the purpose of its railroad, by condemnation, in the manner and by the proceedings prescribed by the condemnation law. Then follows the prohibition, as follows: "Nothing in this section shall be deemed to authorize a street railroad corporation to acquire real property within a city by condemnation."

The amendment to section 90 (chapter 933, p. 791, Laws 1895) is a radical and important one. It contemplates the organization of a street surface railroad corporation for the purpose of erecting, maintaining, and operating a street railroad on private property, as well as upon streets, avenues, roads, and highways. It for the first time authorizes condemnation of private property other than such as is incidental to the location, maintenance, and operation of its railroad on streets, avenues, roads, and highways. Notwithstanding the comprehensive meaning of the words "real property," we are of the opinion, in view of all the legislation on the subject of the rights of way for railroads, that the Legislature only intended by the prohibition to prevent street surface railroad corporations from condemning private property in cities for the purpose of erecting, maintaining, and operating their railroads thereon, and did not thereby intend to prevent such street surface railroad corporations from obtaining by condemnation the property rights of the owners of abutting land in the bed of the street or highway in front of their premises. Any other construction would make the railroad law, as a whole, inconsistent, unreasonable, and absurd. The control of the local authorities is subject to the acquisition of the property rights of the owners of the soil, which property rights the court has power to condemn and transfer to street surface railroad corporations on payment of the consideration to be ascertained and determined in such proceeding.

Judgment affirmed, with costs. All concur.